RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0197p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

PRODUCT SOLUTIONS INTERNATIONAL, INC.,

*Plaintiff-Appellant,*

*v.*

ALDEZ CONTAINERS, LLC,

*Defendant-Appellee.*

No. 21-2952

———————————

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:21-cv-11129—Bernard A. Friedman, District Judge.

Argued: June 7, 2022

Decided and Filed: August 22, 2022

Before: BATCHELDER, CLAY, and LARSEN, Circuit Judges.

———————————

## COUNSEL

———————————

**ARGUED:** Michael J. Hamblin, LAW OFFICE OF MICHAEL J. HAMBLIN, Bloomfield Hills, Michigan, for Appellant. Irene B. Hathaway, BRUCE HATHAWAY PLLC, Birmingham, Michigan, for Appellee. **ON BRIEF:** Michael J. Hamblin, LAW OFFICE OF MICHAEL J. HAMBLIN, Bloomfield Hills, Michigan, for Appellant. Irene B. Hathaway, BRUCE HATHAWAY PLLC, Birmingham, Michigan, for Appellee.

———————————

## OPINION

———————————

CLAY, Circuit Judge. Plaintiff Product Solutions International, Inc. ("PSI") appeals the dismissal of its complaint against Aldez Containers, LLC ("Aldez"). PSI sued Aldez and associated parties in 2019 alleging various claims arising from a contract dispute. The district

court dismissed Aldez from that suit because PSI failed to state a claim against Aldez. In 2021, PSI filed a second complaint solely against Aldez for the same conduct as the 2019 suit. The district court held that the 2021 suit was barred by res judicata. We **AFFIRM** for the reasons set forth below.

## I. BACKGROUND

### Factual Background

While the underlying facts in this contract dispute are fairly complex, the facts necessary for resolving this appeal are simple. PSI is a Massachusetts-based corporation that helps customers bring products to market by aiding in the design, manufacture, quality assurance, and logistics of creating new products. In August 2015, P.B. Products, LLC ("P.B. Products"), a Michigan-based company, contacted PSI for assistance with the design, manufacture, and distribution of a custom cosmetics travel bag called the Orgo Bag. The idea for the bag was conceived by Diane Pattison Copek and Michael J. Byrne, who were executives of P.B. Products.

PSI and P.B. Products worked together to refine the design of the Orgo Bag. At the same time, PSI was in discussions with its manufacturers in China to mass produce the Orgo Bag. PSI submitted a purchase order to its Chinese manufacturers indicating that P.B. Products would purchase 100,000 Orgo Bags in the first year and purchase another 1.5 million bags annually thereafter.

Unfortunately for P.B. Products, demand for the Orgo Bag did not match the massive purchase agreement. During the first 18 months of sales, P.B. Products purchased only 38,296 Orgo Bags. Because demand for the Orgo Bag was so much less than P.B. Products had anticipated, P.B. Products refused to accept additional shipments of the Orgo Bag. In turn, PSI directed the Chinese manufacturer to mitigate its losses and liquidate any materials it had purchased for the Orgo Bag. When the dust settled, the failure of the Orgo Bag cost PSI $506,129.44.

**Procedural Background**

On September 24, 2019, PSI commenced an action (the "2019 suit") against P.B. Products, Copek, Byrne, and Aldez. *Prod. Sols. Int'l, Inc. v. P.B. Prods., LLC*, No. 19-CV-12790, 2020 WL 3129978, at *1 (E.D. Mich. June 12, 2020). That diversity suit alleged breach of contract, promissory estoppel, fraud, silent fraud, negligent misrepresentation, innocent misrepresentation, and non-acceptance of conforming goods under the Uniform Commercial Code. *Id.* The complaint contained no allegations regarding any duty owed or any breach by Aldez. *Id.* at *3. The defendants jointly moved to dismiss the complaint. *Id.* at *1. The district court granted the motion in part, dismissing Copek, Byrne, and Aldez from the suit, but permitted some claims against P.B. Products to continue. *Id.* at *3. PSI never sought leave to amend its complaint to fix the deficient allegations against Aldez.

On May 17, 2021, PSI commenced the present action (the "2021 suit") against Aldez. In the 2021 suit, PSI sued Aldez only for breach of contract, promissory estoppel, and non-acceptance of conforming goods under the Uniform Commercial Code. PSI had alleged these three claims in the 2019 suit and the claims arose from the same facts. Aldez moved to dismiss the complaint arguing that it was barred by res judicata and that it failed to state a claim. PSI responded that in the 2019 suit, its claims were pleaded directly against Aldez, whereas in the 2021 suit, it sought to pierce P.B. Product's corporate veil and hold Aldez vicariously liable. The district court granted the motion to dismiss solely on the basis of res judicata. It held that PSI's claims in the 2021 suit "[were], or could have been, resolved in the first" suit. (Op. & Order Granting Def.'s Mot. to Dismiss, R. 9, PageID # 191.) PSI timely appealed.

## II. DISCUSSION

### a  Standard of Review

"We review de novo a district court's application of the doctrine of res judicata." *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009). We also review de novo dismissals under Federal Rule of Civil Procedure 12(b)(6). *Lipman v. Budish*, 974 F.3d 726, 740 (6th Cir. 2020). While the question of whether to grant a Rule 12(b)(6) motion to dismiss is typically confined to the pleadings, we "may take judicial notice of other court proceedings without

converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010).

### b. Analysis

The parties' briefing in this appeal almost exclusively focuses on the merits of the district court's application of res judicata. Accordingly, the first issue we must address is whether federal or state res judicata law governs this case. PSI seeks to apply federal principles of res judicata, whereas Aldez believes Michigan law should be applied.

An intra-circuit split seems to have developed on whether federal or state res judicata law applies in diversity actions. In *Rawe v. Liberty Mutual Fire Insurance Co.*, 462 F.3d 521, 528 (6th Cir. 2006), we held that in "successive diversity actions, federal res judicata principles apply." *See also Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 805 F.3d 701, 709 (6th Cir. 2015) (citing *Rawe* favorably); *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996) ("[W]e shall apply federal res judicata principles in successive federal diversity actions."). However, recently, we have cast doubt on *Rawe*, suggesting that it was inconsistent with then-existing Supreme Court precedent, and was therefore wrongly decided from the start. *N.D. Mgmt., Inc. v. Hawkins*, 787 F. App'x 891, 896 (6th Cir. 2019). Specifically, five years before *Rawe*, the Supreme Court held that federal courts sitting in diversity should apply "the law that would be applied by state courts in the State in which the federal diversity court sits" so long as the state rule is not "incompatible with federal interests." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508–09 (2001). *Rawe* made no mention of *Semtek*. Furthermore, in 2008, two years after *Rawe*, the Supreme Court reiterated that "[f]or judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) (citing *Semtek*, 531 U.S. at 508).

A prior published decision of this Court "remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision." *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)). This principle extends to situations where a prior opinion "overlooked" then-existing precedent. *The Ne. Ohio*

*Coal. for the Homeless v. Husted*, 831 F.3d 686, 720 (6th Cir. 2016). On the issue of whether to apply federal or state preclusion law, *Semtek* and *Rawe* instruct us to undertake different analyses. Therefore, as binding Supreme Court precedent, we must follow *Semtek* over *Rawe* and apply Michigan law.

Under Michigan law, res judicata applies when "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004). In addition to having been decided on the merits, "the doctrine [of] res judicata only [applies] when the previous decree is a *final* decision." *Kosiel v. Arrow Liquors Corp.*, 521 N.W.2d 531, 533 (Mich. 1994) (emphasis in original). However, "[a] final order is an order which, by itself or in conjunction with previous orders, disposes of *all of the claims of all of the parties* . . . ." *Dean v. Tucker*, 451 N.W.2d 571, 574 (Mich. Ct. App. 1990) (per curiam) (emphasis added); *Stanton v. Woodside*, 817 F. App'x 172, 174 (6th Cir. 2020).

Regarding the first element, PSI attempts to concede that the dismissal of Aldez from the 2019 suit was a decision on the merits. But because the dismissal of Aldez from the 2019 suit did not dispose of all claims against all parties, Aldez's res judicata argument is lacking an essential element. *See Stanton*, 817 F. App'x at 174–175. Accordingly, we cannot affirm the dismissal of PSI's complaint on the basis of res judicata.

Although res judicata cannot preclude PSI's suit, dismissal of the 2021 suit is proper. "We may affirm on any ground supported by the record, even if not relied upon by the district court." *Golf Vill. N., LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021). Aldez argued before the district court that PSI failed to state a claim. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[W]e construe the complaint in the light most favorable to the plaintiff, draw all reasonable inferences in its favor, and accept all well-

pleaded allegations in the complaint as true." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021).

In the 2019 suit, the district court dismissed PSI's claims against Aldez for failing to state a claim. Specifically, the district court found that "[t]he complaint d[id] not allege that Aldez was a party to any contract. The complaint merely allege[d] that Aldez is a shipping company." *Prod. Sols. Int'l*, 2020 WL 3129978, at *3. In the 2021 suit, PSI altered its "claims" and now seeks to pierce P.B. Products' corporate veil and hold Aldez vicariously liable. Besides changing the theory of recovery, the 2019 and 2021 complaints are virtually identical. We agree with the district court that the pleadings fail to allege sufficient facts to plausibly claim breach of contract, promissory estoppel, and non-acceptance of conforming goods under the Uniform Commercial Code.

To get around the obviously deficient pleadings, PSI has added a few paltry allegations that "P.B. Products, LLC is the agent, alter ego, and mere instrumentality of [Aldez]." (Compl., R. 1, PageID #2.) It argues that in the 2019 suit all its claims were filed as "direct claims" against Aldez, but the 2021 suit's complaint is different because it brings a veil-piercing "claim." However, piercing the corporate veil is not a cause of action under Michigan law.[1] *Gallagher v. Persha*, 891 N.W.2d 505, 509 (Mich. Ct. App. 2016) (recognizing that under Michigan law, piercing the corporate veil is "a remedy, and not a separate cause of action"). In fact, PSI admitted at oral argument that the 2021 suit is preemptively seeking relief in the hopes it receives a favorable judgment in its 2019 suit against P.B. Products. We are not aware of any context under Michigan law that permits a party to recover for an alleged injury before obtaining a judgment. We refuse to let PSI do that in this case.

---

[1]PSI relies primarily on *Gallagher v. Persha*, 891 N.W.2d 505, 515 (Mich. Ct. App. 2016), to argue that it is entitled to bring its second veil piercing action. However, in that case, the Michigan Court of Appeals held that "*when a judgment already exists against a corporate entity*, an additional cause of action is not needed to impose liability against a shareholder or officer if a court finds the necessary facts to pierce the corporate veil." *Id*. at 515 (emphasis added). In the present appeal, no previously obtained judgment exists—the 2019 suit is still pending. Accordingly, *Gallagher* cannot save PSI's 2021 suit.

Because the complaint does not allege any wrongdoing by Aldez and corporate veil piercing is not a cause of action under Michigan law, the 2021 suit's complaint fails to state a claim.

### III.  CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.[2]

---

[2]The issue of whether the dismissal of the 2021 action will have any preclusive effect on PSI's ability to bring a *Gallagher*-type action in the event it obtains a favorable judgment in the 2019 suit is not yet ripe. Accordingly, we decline to address it.