NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0291n.06

No. 12-5802

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 02, 2016
DEBORAH S. HUNT, Clerk

GMAC MORTGAGE, LLC, et al.,

     Plaintiffs-Appellees,

v.

HEATHER MCKEEVER, et al.,

     Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

_____/

BEFORE:    CLAY, GIBBONS, and STRANCH, Circuit Judges.

**CLAY, Circuit Judge.**   Defendants Heather McKeever and Shane Haffey ("McKeever")[1] appeal from the district court's judgment in favor of Plaintiff Deutsche Bank. The original plaintiff in this action, GMAC Mortgage, LLC ("GMACM"), filed suit in federal district court seeking a declaration that McKeever's purported rescission of the mortgage on her home pursuant to the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*., was invalid. The district court later granted GMACM's motion to substitute Deutsche Bank as plaintiff; summary judgment in favor of Deutsche Bank followed. On appeal, McKeever argues that the district court erred by: (1) allowing GMACM to substitute Deutsche Bank as plaintiff; and (2) granting Deutsche Bank's motion for summary judgment. For the reasons set forth below, we **AFFIRM** the district court's judgment in full.

---

[1] McKeever is a co-defendant along with her husband, Shane Haffey. For the sake of simplicity, and because McKeever served as her and Haffey's counsel in this case, we use McKeever's name to refer to both defendants collectively.

## BACKGROUND

### A.       Civil Action No. 5:08-cv-00459 ("Case No. 08-459") and Appeal No. 12-5802

McKeever appeals from one of five consolidated cases litigated in federal district court, all of which concern the mortgage on her home located at 3250 Delong Road, Lexington, Kentucky (the "Property").[2] The originating case for this appeal, Case No. 08-459, was filed by GMACM on November 7, 2008. GMACM's complaint alleged that in May 2007, McKeever entered into an agreement whereby she received a $1,000,000 loan secured by a mortgage on her home (the "Loan"). GMACM averred that it was currently the servicer of the Loan on behalf of Deutsche Bank. The complaint further stated that "[o]n or about October 15, 2008, [McKeever] sent correspondence to" GMACM purporting to rescind the Loan under the TILA and a regulation promulgated thereunder, 12 C.F.R. § 226.23 ("Regulation Z"). (No. 08-459, R. 1, PageID 2.)

Regulation Z states, in pertinent part:

(a) Consumer's right to rescind.

> (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction . . . .

> (2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. . . .

> (3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. . . .

---

[2] These cases are: Civil Action No. 5:08-cv-00456; Civil Action No. 5:08-cv-00459; Civil Action No. 5:08-cv-00510; Civil Action No. 5:09-cv-00362; and Civil Action No. 5:11-cv-00188. Only those cases relevant to this appeal are discussed herein.

12 C.F.R. § 226.23 (footnotes omitted).[3] GMACM's complaint maintained that "[McKeever] ha[s] not provided any specific detail as to any TILA violations that would give rise to the purported recission [*sic*], and ha[s] given no other legitimate basis for the recission [*sic*]." (No. 08-459, R. 1, PageID 3.)

McKeever thereafter filed a motion for judgment on the pleadings noting that in a related federal district court action concerning the Property—Civil Action No. 5:08-cv-00510 ("Case No. 08-510")—GMACM had argued that it was not the "real party in interest" to the Loan because it was merely "the current servicer of the loan on behalf of Deutsche Bank as trustee." (No. 08-459, R. 22, PageID 98–99.) McKeever argued that GMACM's claims against her should therefore be dismissed for lack of standing.

In response to McKeever's motion, the district court ordered GMACM to supply supplemental briefing on Federal Rule of Civil Procedure 17's requirement that an action be prosecuted in the name of the real party in interest. GMACM answered with a motion to substitute Deutsche Bank as plaintiff. In that motion, GMACM: (1) maintained that it had standing because it was the servicer of the Loan, and because McKeever sent her rescission letter to GMACM; and (2) requested that Deutsche Bank be substituted as plaintiff "in an abundance of caution." (No. 08-459, R. 39, PageID 243–44.) The district court granted GMACM's motion to substitute pursuant to Rule 17(a)(3) and denied McKeever's motion for judgment on the pleadings as moot.

---

[3] The "material disclosures" to which Regulation Z refers "means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule, and the disclosures and limitations referred to in §§ 226.32(c) and (d) and 226.35(b)(2)." 12 C.F.R. § 226.23(a)(3) n.48.

Proceeding as Plaintiff, Deutsche Bank filed a motion for summary judgment. In that motion, Deutsche Bank argued that McKeever's TILA rescission claim in Case No. 08-459 was barred under the doctrines of res judicata and law-of-the-case because the district court's ruling in Case No. 08-510 already disposed of those claims. The district court agreed and issued an order granting summary judgment to Deutsche Bank. In its order, the district court held:

> This court . . . has previously held that [McKeever's] allegation of a rescission is without merit. [McKeever's] rescission claim in [Case No. 08-510] was rejected when they asserted the claim as plaintiffs against GMAC. . . . Here, [McKeever] provide no new information on the issue that would constitute an extraordinary circumstance justifying a divergence from the court's prior holdings; therefore, the law-of-the-case doctrine makes the court's earlier rulings binding, and [McKeever's] rescission claim is invalid.

(No. 08-459, R. 135, PageID 1318–19.) McKeever timely appealed.

**B.      Case No. 08-510**

As noted above, the district court order from which McKeever now appeals was decided on the basis of the "law-of-the-case" doctrine, citing a ruling in Case No. 08-510. We therefore discuss the relevant history of that case below.

McKeever filed Case No. 08-510 in Kentucky state court on November 21, 2008,[4] naming as defendants: (1) Mortgage Electronic Registration Systems, Inc. ("MERS"); (2) GMACM; and (3) "Concealed and Unknown Persons who are the 'Real Parties in Interest,'" for whom GMACM is "the Loan Servicing Agent." (No. 08-510, R. 1-4, PageID 12–13.) Case No. 08-510 concerned the same Loan secured by a mortgage on McKeever's home at issue in Case No. 08-459. McKeever's complaint made twelve claims against the named defendants in that case, including a claim for rescission under TILA and Regulation Z. Her complaint alleged, for example, that "[t]he Homeowners seek a remedy under . . . TILA . . . to obtain rescission recognition." (*Id.* at 14.)

---

[4] Shane Haffey was again named as McKeever's co-party in Case No. 08-510.

McKeever's suit was removed to federal court, whereupon GMACM filed a motion to dismiss pursuant to 12(b)(6). In analyzing GMACM's motion, the district court observed that McKeever "claim[s] to have rescinded the Note and Mortgage under the [TILA]" via the October 2008 letters sent to GMACM and MERS. (No. 08-510, R. 17, PageID 134.) The court then found:

> The [October 2008] letters sought to rescind the Note and Mortgage and demanded a refund of all funds and interest paid. There are no statements in the letters that GMAC had violated any statute and no factual support for any role by GMAC, other than providing information upon request.

(*Id.* at 138.) On that basis, the district court granted GMACM's motion and dismissed all of McKeever's claims—including those relating to rescission under the TILA—against GMACM.

With McKeever's claims against GMACM dismissed, litigation in Case No. 08-510 continued against the remaining named defendant, MERS. The district court later granted MERS's motion for summary judgment and entered final judgment against McKeever. McKeever filed a motion to reconsider, arguing, *inter alia*, that the case should remain open so she could prosecute her claims against the "'John Doe' Defendants, (the actual owners of McKeever's mortgage loan)."[5] (No. 08-459, R. 81, PageID 616–17.)[6] The district court denied that motion, holding that McKeever failed to follow the proper procedures for pursuing claims against unknown defendants.

McKeever appealed from the judgment in Case No. 08-510, but this Court later dismissed that appeal for lack of prosecution. McKeever's subsequent motions to reinstate the appeal were denied.

---

[5] Notably, GMACM notified McKeever that it was servicing the Loan on behalf of Deutsche Bank in its complaint for Case No. 08-459, filed on November 7, 2008—some two weeks before McKeever even filed Case No. 08-510.

[6] Due to the consolidation of cases concerning the Property, some motions and orders for Case No. 08-510 were filed on the docket for Case No. 08-459.

## DISCUSSION

### I. The District Court Did Not Err by Granting GMACM's Motion to Substitute Deutsche Bank as Plaintiff

**Standard of Review**

Questions regarding a plaintiff's Article III standing are reviewed *de novo*. *Schultz v. United States*, 529 F.3d 343, 349 (6th Cir. 2008).

**Analysis**

Below, McKeever moved for judgment on the pleadings, arguing that mortgage servicer GMACM lacked standing to bring claims related to the Loan because Deutsche Bank actually held the mortgage. The district court denied that motion as moot after granting GMACM's motion to substitute Deutsche Bank as plaintiff. On appeal, McKeever notes that "[t]he Order Granting the Motion to Substitute cites to Rule 17(a), but is silent as to the threshold issue of standing." (Pet'rs' Br. at 28.) She thereafter contends that the district court lacked jurisdiction to grant GMACM's Rule 17(a) motion because GMACM did not have standing to make that motion in the first place. Although McKeever cites no cases in support of this argument, the argument has some merit.

Federal Rule of Civil Procedure 17(a)(1) requires that an action "be prosecuted in the name of the real party in interest." The Rule goes on to state:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3). Deutsche Bank argues that this language renders standing defects moot upon the substitution of the real party in interest. However, in *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528 (6th Cir. 2002), we held that where a plaintiff "admittedly has not suffered injury

in fact by the defendants, it had no standing . . . to make a motion to substitute the real party in interest [under Rule 17]." *Id.* at 531.

In *Zurich*, the plaintiff insurance company filed a claim on behalf of its purported insured. *Id.* at 530. It was later discovered that the actual insurer was a sister company of the plaintiff—both insurance companies were under common ownership of a single "grandparent" entity. *See id.* at 533 (Gilman, J., concurring). The defendant moved to dismiss the plaintiff's suit for lack of standing; the plaintiff moved to substitute its sister company pursuant to Rule 17(a). *Id.* at 530. The district court granted the defendant's motion and dismissed the suit. *Id.* We affirmed dismissal of the action for lack of standing, holding that Rule 17(a) could not be used to allow the true insurer, "which was not vigilant in protecting its claims," the benefit of the plaintiff insurance company's mistake. *Id.* at 532. "The Federal Rules of Civil Procedure cannot expand the subject matter jurisdiction of federal courts," we explained, and Rule 17(a) "must be read with the limitation that a federal district court must, at a minimum arguably have subject matter jurisdiction over the original claims." *Id.* at 531.

*Zurich* thus establishes that in order for GMACM to have succeeded on its motion to substitute Deutsche Bank, it must have had standing to pursue that motion in the first instance. "The 'well established' law of Article III standing requires a plaintiff to 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012) (quoting *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 598 (2007)). The plaintiff's injury, moreover, must be "(a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal

citations and quotation marks omitted). "We look to the complaint and any accompanying materials in deciding standing questions." *Murray*, 681 F.3d 748.

We find that unlike the plaintiff in *Zurich*, GMACM has proffered facts sufficient to establish its own Article III standing and, therefore, to pursue its motion to substitute Deutsche Bank as plaintiff. GMACM's complaint alleged that it was the servicer of the McKeever's loan on behalf of Deutsche Bank. At least one of our sister circuits has found that the rights held by a loan servicer grant it standing to prosecute cases relating to the debt that it services. *See Greer v. O'Dell*, 305 F.3d 1297, 1302 (11th Cir. 2002) ("[T]he sole issue before us is whether a loan servicer is a 'real party in interest' with standing to conduct, through licensed counsel, the legal affairs of the investor relating to the debt that it services. We answer this question in the affirmative."); *see also In re Woodberry*, 383 B.R. 373, 376–79 (Bankr. D.S.C. 2008) (collecting cases and holding that a loan servicer with a contractual duty to collect payments and foreclose mortgages has standing to move for relief of stay in bankruptcy proceedings involving the loan being serviced).

GMACM's motion to substitute provided additional information establishing GMACM's standing to pursue that motion. Attached to the motion was the servicing agreement between Deutsche Bank and GMACM. That agreement states that as servicer of Deutsche Bank's loans, GMACM was entitled to certain compensation, including "assumption fees, late payment charges, [and] investment income . . . ." (No. 08-459, R. 39-1, Decl. of Judy Faber, PageID 281.) GMACM necessarily stood to lose any such compensation that arose from servicing McKeever's loan as a result of her purported rescission. GMACM therefore established "concrete and particularized" injuries that were "fairly traceable to" McKeever's conduct. *See Lujan*, 504 U.S. 560 (internal alterations and quotation marks omitted). Thus, GMACM had

standing to pursue its motion to substitute Deutsche Bank as the real party in interest, and the district court did not err by addressing that motion on the merits.

**II.     McKeever's TILA Rescission Claim in Case No. 08-459 Is Barred by the District Court's Judgment in Case No. 08-510**

**Standard of Review**

Although a district court has some discretion to revisit an already-decided issue or let its decision stand as "law of the case," *see United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990), "[w]hether a prior decision constitutes law of the case is a legal issue that we review de novo." *Stewart v. Beach*, 701 F.3d 1322, 1329 (10th Cir. 2012); *see also* 36 C.J.S. *Federal Courts* § 602 (2016) ("[w]hether the law-of-the-case doctrine applies in a specific instance is a question of law"). Application of the doctrine of res judicata is also a question of law to be reviewed *de novo*. *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009).

**Analysis**

Below, the district court held that McKeever's TILA rescission claim was barred by the court's prior ruling in consolidated Case No. 08-510. In so doing, the court cited to the "law-of-the-case" doctrine. On appeal, Deutsche Bank argues that the district court properly applied that doctrine; and, in the alternative, that the district court's judgment in Case No. 08-510 was res judicata, thus constituting another basis on which we may affirm. *See La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 477 (6th Cir. 2010) ("[W]e may affirm the judgment of the district court on any ground supported by the record."). For the reasons discussed below, we conclude that the law-of-the-case doctrine was inappropriately applied in this case, but we agree that res judicata provides another basis on which to affirm.

### A.  Law-Of-The-Case Doctrine

The law-of-the-case doctrine "provides that the courts should not reconsider a matter once resolved in a continuing proceeding." *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015) (internal quotation marks omitted).  Describing the doctrine, the Supreme Court has stated:

> A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice."

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988).[7]  Thus, like the doctrines of claim and issue preclusion, law-of-the-case is designed to "prevent[] the relitigation of an issue once there has been a judgment on the merits." *Bowles v. Russell*, 432 F.3d 668, 676 (6th Cir. 2005) (citing 18 *Moore's Federal Practice* § 134.20 (Matthew Bender 3d ed.)); *see also Howe*, 801 F.3d at 740 (observing that law-of-the-case doctrine "is a prudential practice" intended "to encourage efficient litigation and deter indefatigable diehards" (internal quotation marks omitted)).

Unlike claim or issue preclusion, however, the law-of-the-case doctrine is not used to prevent relitigation of the same issues across different cases; rather, "[t]he purpose of the law-of-the-case doctrine is to ensure that the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *Howe*, 801 F.3d at 739 (emphases in original) (internal quotation marks omitted); *see also Arizona v. California*, 460 U.S. 605, 618 (1983) ("the [law-of-the-case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"); 18B Charles Alan Wright et al., *Federal Practice & Procedure: Jurisdiction & Related Matters* § 4478 (4th

---

[7] The term "law-of-the-case" is also used to describe the binding effect of appellate decisions on remand to the originating court.  *See, e.g.*, *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990) (observing that one purpose of the doctrine is "to assure compliance by inferior courts with the decisions of superior courts").

ed. 2015) ("Law-of-the-case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. They do not apply between separate actions." (footnotes omitted)); Joan Steinman, *Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation* ("*Law of the Case*"), 135 U. Pa. L. Rev. 595, 597–98 (1987) (describing law-of-the-case doctrine as "a concept that precludes the relitigation of issues within the context of a single case once they have been decided").

This raises the question of whether consolidated cases, like those at issue here, can be considered the "same case" for law-of-the-case purposes. In answering this question, we begin with the well-established principle "that consolidated cases remain separate actions." *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 551 (6th Cir. 1994). "[A]lthough consolidation is permitted as a matter of convenience and economy in administration, it does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 412 (6th Cir. 1998) (internal brackets and quotation marks omitted) (quoting *Johnson v. Manhattan Ry.*, 289 U.S. 479, 496–97 (1933)). Using the law-of-the-case doctrine to bar relitigation of similar issues across consolidated cases would therefore seem to implicate the bedrock principle of due process that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry v. Lee*, 311 U.S. 32, 40 (1940).

We note, however, that this principle of due process is *not* offended when a judgment from one case is used to bar relitigation in a different case, so long as "the party against whom an estoppel is asserted had a full and fair opportunity to litigate" the precluded claim or issue in the

first action. *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971). This is the concept of res judicata, *see id.*, which encompasses both the claim- and issue-preclusion doctrines. *Mitchell v. Chapman*, 343 F.3d 811, 818 n.5 (6th Cir. 2003). What differentiates the preclusion doctrines from law-of-the-case, however, are their more rigorous analyses that ensure they are applied to bar only those claims or issues that have been fully and fairly litigated. *See Blonder-Tongue*, 402 U.S. at 329 (describing the determination of a prior full and fair opportunity to litigate as "a most significant safeguard").

The common law rules governing use of the law-of-the-case doctrine are understandably less involved: because the doctrine presumes application within a single case, and thus an identity of parties and claims, *see Howe*, 801 F.3d at 739, the sole requirement for its application is that the court must have already "actually decided" the relevant issue. *Id.* at 739–40 (noting, for example, that an issue has not been "actually decided" where it was "assumed without decision for purposes of resolving another issue"). That limited inquiry, however, will not always be sufficient to protect the parties' rights when barring claims across consolidated cases. This is especially true in circumstances where the consolidated cases involve different parties or different underlying factual circumstances. In such instances, applying the more rigorous inquiries of claim or issue preclusion will better ensure that only fully and fairly litigated claims or issues are barred. *Cf. Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1317 (7th Cir. 1995) ("The doctrine that limits the relitigation of an issue in a subsequent suit, as opposed to a subsequent stage of the same suit, is collateral estoppel, not law of the case.").

Based on the above, we hold that the district court erred by using the law-of-the-case doctrine to preclude McKeever's TILA rescission claim in Case No. 08-459 on the basis that the court had already decided that issue against her in consolidated Case No. 08-510. Although

those two cases were consolidated for the sake of convenience and judicial economy, such consolidation did not merge them into a single cause. *Lewis*, 135 F.3d at 412. Moreover, as evidenced by our discussion in section II-B, *infra*, a more thorough analysis was needed to determine whether it was fair to preclude McKeever from relitigating her TILA rescission claim against Deutsche Bank where she previously litigated that claim against GMACM. Thus, the district court should have applied either claim or issue preclusion to analyze whether McKeever's TILA rescission claim was barred in Case No. 08-459. *See Rodriguez v. Passinault*, 637 F.3d 675, 689 n.6 (6th Cir. 2011) (concluding in dicta that the law-of-the-case doctrine does not apply between consolidated cases because "consolidation under Fed. R. Civ. P. 42 does not render rulings in one case applicable to a consolidated action"); Steinman, *Law of the Case*, 135 U. Pa. L. Rev. at 626 ("[A] court faced with an apparent law of the case problem should first ask whether the requested ruling is on an issue that has been previously decided in the particular case, and not merely in another component of the consolidation.").

## B.     Res Judicata

As noted above, Deutsche Bank argues that we may affirm the district court's judgment on alternative grounds: regardless of whether the district court appropriately applied the law-of-the-case doctrine to bar McKeever's TILA rescission claim in Case No. 08-459, that claim was barred because the district court's judgment in Case No. 08-510 constituted res judicata. "Res judicata generally includes two separate concepts—claim preclusion and issue preclusion." *Mitchell*, 343 F.3d at 818 n.5. In this instance, Deutsche Bank relies on claim preclusion, which "refers to effect of a prior judgment in foreclosing a subsequent *claim* that has never been litigated, because of a determination that it should have been advanced in an earlier action." *Id.*

McKeever, Deutsche Bank argues, *could and should have* fully litigated her TILA rescission claim in Case No. 08-510, and therefore that claim is barred.

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Under the federal common law doctrine of claim preclusion, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Bragg*, 570 F.3d at 776 (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).

> Under this Court's articulation of [claim preclusion], a claim will be barred by prior litigation if the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) *a subsequent action between the same parties or their "privies";* (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997) (emphasis in original).

In this case, there is no dispute that Case No. 08-510 ended in a final decision on the merits by a court of competent jurisdiction. Moreover, Case No. 08-459 involved an issue—namely, whether McKeever's letters effected a valid rescission of the Loan—which either was or should have been fully litigated in Case No. 08-510. Finally, both cases arose out of McKeever's mortgage on the Property and therefore involved the same causes of action. *See Browning v. Levy*, 283 F.3d 761, 773–74 (6th Cir. 2002) (holding identity of causes of action element satisfied where "the claims arose out of the same core of operative facts"). Thus, the primary issue is whether Deutsche Bank is entitled to the benefits of the district court's judgment against McKeever on her TILA rescission claim in Case No. 08-510, even though Deutsche Bank was not a named party in that case.

As the above recitation of the elements of claim preclusion indicates, a party in a subsequent action may receive the benefit of a prior judgment if it is in "privity" with a named

party. *Bittinger*, 123 F.3d at 880. We note, however, that the term "privity" by itself is not particularly instructive. *See, e.g.*, Restatement (Second) of Judgments § 62 cmt. c (1982) ("[T]he term 'privity,' unless it refers to some definite legal relationship . . . is so amorphous that it often operates as a conclusion rather than an explanation."); 18A Wright et al., *Federal Practice & Procedure: Jurisdiction & Related Matters* § 4449 (4th ed. 2015) ("[I]t has come to be recognized that the privity label simply expresses a conclusion that preclusion is proper."); *Taylor*, 553 U.S. at 894 n.8 (noting that the term "privity" has "come to be used . . . as a way to express the conclusion that nonparty preclusion is appropriate on any ground"). Rather, an examination of "privity" involves determining whether the circumstances of a particular case fit within discrete exceptions to the general rule against nonparty preclusion. *See Taylor*, 553 U.S. at 898 (rejecting an "amorphous balancing test" for allowing nonparty preclusion in favor of "discrete exceptions that apply in limited circumstances" (internal quotation marks omitted)).

In *Taylor*, the Supreme Court provided a non-exhaustive list of such exceptions. *Id.* at 893–95. Relevant here, the Court in *Taylor* noted that "in certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit." *Id.* at 894 (internal brackets and quotation marks omitted) (quoting *Richards v. Jefferson Cty.*, 517 U.S. 793, 798 (1996)); *see also* Restatement (Second) of Judgments § 41 (1982) ("A person who is not a party to an action but who is represented by a party is bound by *and entitled to the benefits of* a judgment as though he were a party." (emphasis added)). *Taylor* went on to provide a rule for this exception's application:

> A party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty.

*Id.* at 900.

These requirements are met in this case. GMACM's briefing on its motion to dismiss in Case No. 08-510 reveals that its interests with regard to the Loan were, unsurprisingly, aligned with Deutsche Bank's. In that briefing, GMACM argued that McKeever's claims against GMACM failed because the claims were premised on the allegedly fraudulent acts of nonparty Bank of the Bluegrass ("BOTB") in originating the Loan. GMACM thereafter asserted that McKeever could not maintain her claims—including her claim for rescission under the TILA—based on BOTB's fraudulent conduct because "GMACM did not originate [McKeever's] loan, was not present at the closing table, and cannot have liability for the allegations set forth against BOTB." (*See* Case. No. 08-510, R. 7-2, PageID 97.) These arguments by GMACM necessarily concerned the same interest in the Property—i.e., the right to collect on the Loan or foreclose on the Property despite McKeever's purported rescission—as held by Deutsche Bank. And because GMACM's arguments were germane to both Deutsche Bank's and its own interests, nothing in the record leads us to believe that GMACM did not understand itself to be acting as a representative of Deutsche Bank in Case No. 08-510.

McKeever's own complaint in Case No. 08-510 makes clear that she, too, understood GMACM to be acting as a representative of another party. For example, paragraph three of her complaint states that

> [t]he Defendant GMAC Mortgage, LLC, . . . is served as a Defendant in several capacities: As a corporate Defendant in its own right . . . and as both the Loan Servicing Agent and Agent for Service of Process for the Defendants named as the Concealed and Unknown Persons who are the "Real Parties in Interest," who are the Concealed True Lender(s) and/or Holder(s) in Due Course as to Claim any Interest [in the Property].

(No. 08-510, R. 1-4, PageID 13.) Notably, GMACM identified Deutsche Bank as the entity on whose behalf GMACM was servicing the Loan in its complaint in Case No. 08-459, filed some two weeks *before* McKeever filed the above-quoted complaint in Case No. 08-510.

The record thus contains ample evidence indicating that GMACM served as an adequate representative of Deutsche Bank in Case No. 08-510, that McKeever was on notice of such representation, and that Deutsche Bank is therefore entitled to the benefits of the judgment in Case No. 08-510.

This conclusion is supported by the Supreme Court's reasoning in *Chicago, R. I. & P. Ry. Co. v. Schendel*, 270 U.S. 611 (1926). In *Schendel*, the Court addressed the relationship between two actions arising out of the death of a single railway employee. *Id.* at 612. The first action was initiated by the administrator of the employee's estate for the benefit of his widow. *Id.* at 614. The second action was a state administrative proceeding brought by the railway company under a state workmen's compensation law. *Id.* The employee's widow was made a party to the administrative action as the sole beneficiary of any resulting workmen's compensation. *Id.* The second-filed action concluded first, resulting in judgment and an award of benefits to the widow. *Id.* The Supreme Court held that the judgment in the second-filed action precluded further litigation in the first, even though the first action was brought by the administrator of the employee's estate. *Id.* at 618.

In so holding, the Court in *Schendel* concluded that the widow and the administrator of her husband's estate were functionally the same party. *See id.* at 620 ("Identity of parties is not a mere matter of form, but of substance. Parties nominally the same may be, in legal effect, different; and parties nominally different may be, in legal effect, the same."); *see also* 47 Am. Jur. 2d Judgments § 595 ("For the purpose of res judicata or collateral estoppel, the courts will look beyond the nominal parties of record to determine the real parties in interest."). "[E]ssential" to the Court's conclusion was the fact that "it is the right of the widow, and of no one else, which was presented and adjudicated in both courts." *Schendel*, 270 U.S. at 618. The

Court explained that because both actions involved the same right, the widow would have been bound no matter which action had concluded first. *Id.* This parity in potential outcome rendered the widow and the administrator of her husband's estate the same party for preclusion purposes. *Id.*

The same is true in this case. Case Nos. 08-459 and 08-510 both concerned Deutsche Bank's right to collect on the Loan and foreclose on the Property despite McKeever's purported rescission under the TILA. We have no reason to doubt that regardless which case resulted in final judgment first, that judgment would have been conclusive as to Deutsche Bank's interest in the Property. This is so, even though GMACM acted as the representative of Deutsche Bank's right to continue collecting on the Loan in Case No. 08-510. In sum, applying claim preclusion in this case comports with the principle "that questions of preclusion by representation 'must be determined as a matter of substance and not of mere form,' according to an identification of the interests advanced in the first action." 18A Wright et al., *Federal Practice & Procedure: Jurisdiction & Related Matters* § 4454 (4th ed. 2015) (quoting *Schendel*, 270 U.S. at 618); *see also* 47 Am. Jur. 2d Judgments § 595 ("Privity involves a person so identified in interest with another that he or she represents the same legal right."); *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 185–187 (1st Cir. 2006) (holding mortgage servicer and mortgage holder were sufficiently identical under Puerto Rico law to justify precluding action by mortgagors to rescind under TILA where mortgage servicer had already secured a default judgment against the mortgagors in a foreclosure action).

Finally, McKeever argues that the Supreme Court's decision in *Jesinoski v. Countrywide Home Loans*, 135 S. Ct. 790 (2015), rendered the judgment in Case No. 08-510 "void." Without commenting on *Jesinoski*'s effect on the district court's holding in Case No. 08-510, we note that

the principles of claim preclusion apply "even if an intervening decision effects a change in the law which bears directly on the legal theory advanced in the second suit." *Harrington v. Vandalia-Butler Bd. of Ed.*, 649 F.2d 434, 437 (6th Cir. 1981); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("[A]n erroneous conclusion reached by the court in the first suit does not deprive the defendants in the second action of their right to rely upon the plea of *res judicata*." (internal quotation marks omitted)); *In re Tenn. Cent. Ry. Co.*, 498 F.2d 904, 906 (6th Cir. 1974) ("The principles of res judicata would govern disposition of this case, even if there had been . . . a change in controlling case law."). "The purpose of res judicata is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources." *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). This purpose would be frustrated by allowing McKeever to collaterally attack a judgment from which she forfeited her right to appeal by failing to prosecute.[8]

We therefore conclude that the district court improperly applied the law-of-the-case doctrine to bar McKeever's rescission claims in Case No. 08-459. Even so, we affirm because McKeever's claims were barred under the doctrine of claim preclusion by the court's judgment in Case No. 08-510.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's judgment in full.

---

[8] On September 15, 2015—nearly five years after the district court entered final judgment in Case No. 08-510—McKeever filed a motion to vacate the judgment in that case pursuant to Federal Rule of Civil Procedure 60. McKeever argued in that motion, as she does in this appeal, that the district court's judgment in Case No. 08-510 was rendered void by *Jesinoski*. We have no occasion to comment upon that motion, except to note that it was denied by the district court on March 24, 2016. Thus, in any event, that motion has no bearing on our reasoning in this case.